# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CELL Film Holdings, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Case No. ____4:16-cv-2781____ |
| **Does** 1-20, anonymous BitTorrent | § | |
| users participating in file-sharing | § | Jury |
| swarm identified by hash ending in | § | |
| 90CF, | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## PLAINTIFF'S, CELL FILM HOLDINGS, LLC'S, COMPLAINT AGAINST DOES 1-20, UNKNOWN PARTICIPANTS IN FILE-SHARING SWARM IDENTIFIED BY HASH 7137AF3CBA43D0549186D0F1EDFCB503CA2390CF FOR COPYRIGHT INFRINGEMENT

# INTRODUCTION

### The Problem

1.  A 2011 study showed that nearly 14% of all internet traffic in the United States constitutes illegal distribution of copyrighted content such as films, television episodes, music, and software via BitTorrent, a peer-to-peer file sharing network used to distribute data over the internet.[1] This report also found that of the most popular 10,000 pieces of content managed by the largest and most popular BitTorrent "tracker" worldwide at the time,[2] film content is by far the most distributed of this material, all of which was copyrighted and shared illegitimately.[3]

2.  Since this report, the volume of films being illegally copied and distributed has only gotten worse,[4] with 46% of the U.S. population

---

[1]  *Envisional Estimates Infringing Use*, YALE J.L. & TECH. 183–85 (2011), *available at* http://www.yalelawtech.org/p2p-law-piracy/envisional-estimates-infringing-use/ (citing *Technical report: An Estimate of Infringing Use of the Internet*, at p. 3, *available at* http://documents.envisional.com/docs/Envisional-Internet_Usage-Jan2011.pdf) [hereinafter *Envisional*].

[2]  PublicBT (publicbt.com).  Id. at p. 4 n. 2.

[3]  Id. at 4.

[4]  See follow-up report, *Sizing the Piracy Universe*, Envisional (Sept. 2013), *available at* https://copyrightalliance.org/sites/default/files/2013-netnames-piracy.pdf.

having illegally copied, shared, or "downloaded for free" music, movies, and TV shows.[5]

3. And the next generation of Americans is poised to engage in such illegal copying to an even greater extent, with 70% of adults under 30 indicating that they copy, share, or download media "for free," and 37% in this age group having acquired most or all of their digital music/video collections or a large collection in this way.[6]

4. As noted by Senator Levin in Congressional hearings on peer-to-peer internet piracy, "it is unfortunate that the software being used—called 'file sharing' as if it were simply enabling friends to share recipes—is helping create a generation of Americans who don't see the harm."

5. But the damage being done to film producers and distributers due to this rampant infringement is tremendous.[7]   The US theatrical and home

---

[5]  Copy Culture in the US and Germany, Columbia University, at 5 (2013), *available at* http://americanassembly.org/sites/default/files/download/-publication/copy_culture.pdf.

[6]  Id.

[7]  See, e.g., Ambassador Froman, 2015 Special 301 Report, Executive Office of the President of the United States (noting that unauthorized recordings of first-run motion pictures that are distributed worldwide via the Internet result in economic harm not only in the market where the film was originally shown, but in other markets as well), *available at* https://ustr.gov/sites/default/files/2015-Special-301-Report-FINAL.pdf.

video revenues changed for the worse in the 2003–04 timeframe, coinciding with the development of the BitTorrent network that has made swapping large movie files practical.[8]  Indeed, according to Texas Representative Lamar Smith, "IP theft costs the U.S. economy more than $100 billion annually and results in the loss of thousands of American jobs."[9]

6.  But there is a nation-wide push to stop the copyright infringement.  For instance, the Department of Justice, in July 2016, announced the arrest of the mastermind behind the most visited illegal file-sharing website, *Kickass Torrents*.[10]  A criminal complaint filed in Chicago charges him with conspiracy to commit money laundering and criminal copyright infringement.  The DOJ estimates this one website was responsible for unlawfully distributing well over $1 billion of copyrighted materials

---

[8]  Zentner, Alejandro, *Measuring the Impact of File Sharing on the Movie Industry: An Empirical Analysis Using a Panel of Countries*, at 2 (Mar. 22, 2010), *available at* http://ssrn.com/abstract=1792615.

[9]  *Smith: Law Needed to Control Cyber Piracy*, Austin American-Statesman (Nov. 28, 2011), *available at* http://www.statesman.com/news/news/opinion/smith-law-needed-to-control-cyber-piracy/nRhYk/.

[10]  *U.S. Authorities Charge Owner of Most-Visited Illegal File-Sharing Website with Copyright Infringement*, Dept. of Justice Press Release, July 20, 2016, *available at* https://www.justice.gov/opa/pr/us-authorities-charge-owner-most-visited-illegal-file-sharing-website-copyright-infringement.

and was the 69th most frequently visited website on the internet. There are countless other similar websites, operating from remote corners of the world, that facilitate illegal distribution of motion pictures, music and ebooks, using BitTorrent software.

7. And there are also local efforts to slow the rampant piracy. In just the past few weeks, the University of Houston announced it will begin blocking BitTorrent peer-to-peer data traffic on the University of Houston Wi-Fi network "to limit illegal downloading of copyrighted material and comply with state and federal laws."[11]

### *BitTorrent Operation*

8. A sister district court describes BitTorrent and the anonymity of its operation as follows:

> BitTorrent allows its users to download files more quickly and efficiently than its predecessor file sharing protocols. Rather than downloading files directly from centralized servers or individual users, BitTorrent allows users, or "peers" to split a file up into pieces and download multiple pieces simultaneously from multiple peers. Once a peer downloads a particular piece of the file in question, he or she automatically begins to share that piece with other peers. These multivariate connections between downloading and uploading users create a "swarm,"

---

[11] University of Houston IT Notice, *available at* http://rationalrights.com/?p=502.

eventually allowing participating users to collect all pieces of a file and reassemble it into its final form. A peer who makes a complete file available to other peers is known as a "seed." As the name implies, each swarm begins with a seed; however, BitTorrent users often remain in a swarm after they have completed downloading a file, thus becoming seeds themselves.

BitTorrent peers are identified to each other only by their IP addresses. Though an IP address, without more, typically cannot be traced back with certainty to an individual user, Internet Service Providers ["ISPs"] can generally link an IP address to its account owner. Moreover, commonly available free web applications can often trace an IP address back to a general geographic area, such as a city or postal code. Thus, BitTorrent users are partially anonymous to each other. While peers' names and other identifying details are opaque, their IP addresses and (to some extent) their locations may be logged and tracked.[12]

9. So, while a rightsholder can observe illegal distribution of its motion picture, it only knows the geographic location of the infringer and the internet protocol ("IP") address used by the infringer to perform the distribution. The identity of the person who was assigned that IP address is only known to that person's internet service provider. An Internet Service Provider ("ISP"), such as Comcast, assigns unique IP

---

[12] *Funimation Entm't v Does 1-427*, 2:11-cv-00269 (E.D. Tex. Sept. 16, 2016) (Doc. 43).

addresses to its subscribers.  And The Cable Privacy Act prohibits cable operators, which includes the ISPs, from disclosing subscribers' personal information without their consent or a court order.[13]

# **PARTIES**

*Plaintiff*

10. CELL Film Holdings, LLC ("CFH") is a Delaware Limited Liability Company with principal offices in Beverly Hills, California.

11. CFH owns the copyright to the motion picture, Cell, the work at issue as described below in paragraphs 33–40, having all pertinent copyright interests needed to bring suit.

12. CFH is a mainstream science fiction motion picture, adapted from a popular novel.  The movie depicts events that take place when a mysterious cell phone signal causes apocalyptic chaos.

13. CFH has put substantial resources into financing the production of its movies.

*Defendants*

14. The defendants are identified herein as Does 1–20.

---

[13] 47 U.S.C. § 551(c).

15. CFH is currently unaware of the true names of Does 1–20.  Due to the surreptitious nature of defendants' actions, the identities of Does 1–20 are concealed from CFH, preventing CFH  from identifying them by name.

16. The defendants in this action are listed in EXHIBIT 2, which identifies each defendant's IP address, a specific time of observed infringing activity, and an estimated geo-located place of the defendant's conduct.

17. Each defendant's IP address has been observed and confirmed as distributing at least a part of Cell through the P2P BitTorrent exchange.

18. On information and belief, at the time of observed copying, each of defendants' IP addresses was managed by the ISP Comcast Communications Management, L.L.C. or its subsidiaries ("Comcast"), who, generally assigns an IP address to a single party for extended periods of time, often for months, and provides Wi-Fi systems with pre-installed security and passwords.

19. The records maintained by Comcast should be able to identify either each defendant, or a subscriber who contracted with Comcast for service who, in turn, is likely to have knowledge that will lead to the identity of each defendant.

20. Plaintiff intends to seek early discovery from Comcast for records or information sufficient to permit plaintiff to identify and name the true defendant.

## SUBJECT MATTER JURISDICTION

21. This is a civil action requesting remedies under U.S. Code Title 17—Copyrights, §§ 502–05, for infringement of copyright as provided by §§ 106 and 113–14 granting, among other rights, that "the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies . . ."

22. This Court has subject matter jurisdiction at least under 28 U.S.C. §1338(a) providing that "[t]he district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to . . . copyrights . . ."

## PERSONAL JURISDICTION

23. For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.

24. And geolocation identifies the IP address associated with each Doe as geographically located within this District where the subscriber is thought to reside.

25. Therefore, upon information and belief, this Court has general jurisdiction over Does 1–20 by virtue of Does residing in this district.

26. Further, specific jurisdiction arises if there was some act by which the defendant purposefully availed himself or herself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

27. The geolocation information, in conjunction with the observed infringing behavior, also shows Does reproduced and/or distributed CFH's work in this district (as described further below), and thus purposefully availed themselves of the privilege of conducting activities in this district.

28. Therefore, CFH's claim relates to Does' contacts with this district, and also supports specific jurisdiction.

## <u>VENUE</u>

29. Venue in copyright cases is governed by 28 U.S.C. § 1400(a), instead of the general venue provision of 28 U.S.C. § 1391.

30. Section 1400(a) allows plaintiffs to bring suit for copyright infringement in the district in which the defendant or his agent resides or "may be found."

31. The Fifth Circuit has held that a defendant "may be found" in any district in which he or she may be subject to personal jurisdiction, as analyzed as if the district were a separate state.

32. Therefore, venue is proper in this Court for the same reasons given in the Personal Jurisdiction section above in paragraphs 23–28.

## WORK AT ISSUE

33. CFH ("Motion Picture") is a movie including many mainstream and well-known actors.

34. The Motion Picture is an adaptation of a popular science fiction novel.

35. The Motion Picture was released in the United States in the summer of 2016.

36. The Motion Picture is registered with the United States Copyright Office.  See EXHIBIT 1 bearing Registration Certificate No. PAu 3-751-312 with effective registration date of October 23, 2014.

37. The Motion Picture contains wholly original material that is copyrightable subject matter under the laws of the United States.

38. The Motion Picture is currently offered for sale in commerce.

39. The Motion Picture includes a proper copyright notice advising the viewer that the Motion Picture is protected under copyright and other applicable laws of the United States of America.

40. Publication and advertising associated with the Motion Picture and packaging and copies bear a proper copyright notice.

## **JOINDER**

41. Joinder in this action is made under Fed. R. Civ. P. 20(a)(2) (permissive) in that plaintiff's claims arise out of the same occurrences or transactions, or series of occurrences or transactions, and that there are questions of law and fact common to each of the defendants.

42. Although the phrase "transaction or occurrence" is not defined in Rule 20(a), courts have analogously interpreted this phrase in the compulsory counterclaims Rule 13(a).  The Supreme Court has stated that for purposes of Rule 13(a): "Transaction" is a word of flexible meaning.  It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship."  Thus, all "logically related" events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence.

43. Specifically, plaintiff has named in this Complaint the group of defendants based upon the same investigation which reveals that they copied at least portions of the same copy of the Motion Picture at or about the same time period, using the same technology, and on information and belief, copied the entire work, and distributed at least portions of that work to others using BitTorrent technology.

44. And the architecture of BitTorrent is such that each file or part thereof downloaded by a peer in a swarm is made available automatically for upload by other peers.  While a peer may upload to a relatively small number of peers directly, those peers in turn upload pieces to other peers who join the swarm later.  Thus, a defendant's "generation" of peers— peers to whom a defendant uploaded the file directly—helps pass on pieces of the copyrighted work to the next "generation" of active peers. In this way, each defendant's infringement built upon the prior infringements, in a cascade of infringement.

45. Therefore, each defendant engaged in a concerted action with other defendants to reproduce and distribute plaintiff's Motion Picture by exchanging pieces of a particular copy of the Motion Picture, as identified by the same Hash Value (see ¶ 51 below), in a torrent swarm. And each Doe defendant interacts, either directly or indirectly, with the

other peers in the swarm in a series of transactions or occurrences that are logically related and will be judged based upon common legal standards.

46. Permissive joinder in the instant case permits a more efficient management of plaintiff's claims against the several defendants and to reduce the costs and burdens to plaintiff, defendants and the Court.

47. The Supreme Court has said that "under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; Joinder of claims, parties and remedies is strongly encouraged."  This Court has stated that the issue of "joinder is better analyzed once unknown defendants have been identified and served."

## DEMAND FOR JURY

48. Plainitff demands a trial by jury on all issues so triable.

## COUNT I—COPYRIGHT INFRINGEMENT

### *Direct*

49. Each defendant, without plaintiff's permission or consent, copied and distributed a portion, and upon information and belief copied an entire copy of, plaintiff's Motion Picture, Cell, as described above in

paragraphs 33–40 through a peer-to-peer network without authorization or right.

50. Plaintiff observed this infringing activity using forensic software to identify the IP addresses using the BitTorrent protocol to reproduce, distribute, display or perform plaintiff's Motion Picture via the internet.

51. The forensic software identified the IP addresses shown in EXHIBIT 2 as uploading and consequently as having downloaded parts or all of the file identified by the hash value of:

7137AF3CBA43D0549186D0F1EDFCB503CA2390CF

("Hash Value"). This Hash Value is a very large hexadecimal number, generated by the particular copy of the Motion Picture through an algorithmic function, such as SHA-1. The same file will always produce the same number using the same algorithm, and any changes to the file will almost certainly produce a different hash value. In this way, a hash value is the file's "digital fingerprint" uniquely identifying a specific file.

52. The media file that corresponded to the Hash Value was substantially similar, if not identical, to plaintiff's Motion Picture.

53. Plaintiff did not authorize, permit, license or consent to defendants' copying of its Work.

54. While copyright infringement is a strict liability offense, and a court will not absolve a defendant for copying a work unconsciously or truly believing the conduct was non-infringing, the use of BitTorrent is an intentional willful act that requires a number of intentional steps as outlined in paragraphs 56–58.

55. As a result of the foregoing, each defendant violated one or more of plaintiff's exclusive right to:

   A. Reproduce the Motion Picture in copies, in violation of 17 U.S.C. §§ 106(1) and 501;

   B. Redistribute copies of the Motion Picture to the public by sale or other transfer of ownership, or by rental, lease or lending, in violation of 17 U.S.C. §§ 106(3) and 501;

   C. Perform the Motion Picture, in violation of 17 U.S.C. §§ 106(4) and 501, by showing the Motion Picture's images in any sequence and/or by making the sounds accompanying the Motion Picture audible and transmitting said performance of the Motion Picture, by means of a device or process, to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definitions of "perform" and "publicly" perform); and

D. Display the copyrighted Motion Picture, in violation of 17 U.S.C. §§ 106(5) and 501, by showing individual images of the Work sequentially or non-sequentially and transmitting said display of the Motion Picture by means of a device or process to members of the public capable of receiving the display (as set forth in 17 U.S.C. § 101's definition of "publicly" display).

### *Willful*

56. Each defendant's conduct has been willful within the meaning of 17 U.S.C. § 504(c)(2), intentional, in disregard of and indifferent to plaintiff's rights, with notice, and with the intent to deprive plaintiff of income and cause plaintiff harm.

57. Specifically, each defendant had to ignore the copyright notice advising the viewer that the Motion Picture is protected under copyright law found on all publication and advertising associated with the Motion Picture, install file distribution software on a computer, search for and load a Torrent file from a website such as The Pirate Bay, select plaintiff's Motion Picture to download, and then participate in the peer-to-peer distribution of Cell.

58. Plaintiff has suffered actual damages that were proximately caused by each of the defendants, including lost sales, price erosion and a diminution of the value of its copyright.

## *Contributory*

59. Providing the means for others to infringe creates liability for contributory copyright infringement.

60. Each of the defendants were observed uploading file(s) corresponding to illegally copied versions of Cell. As such, defendants provided other persons the means to infringe CFH's copyright, thereby inducing, causing or materially contributing to the infringing conduct of others and of each other defendant.

61. Additionally, uploaded portions of plaintiff's work remain on peer computers after a defendant stops directly participating in a swarm. As such, each of defendant's contribution also increases the over-all availability of plaintiff's work via the BitTorrent network after any direct peer-to-peer transmissions. In this way, defendants additionally induce, cause or materially contribute to the infringing conduct of others and of other defendants.

*Vicarious*

62. Vicarious liability requires neither knowledge of direct infringement or intent to infringe, but only requires a financial benefit and the ability to supervise.

63. To the extent defendant ISP subscriber allowed a household member whom defendant has the ability to control or reasonably discipline to use the internet connection to copy and obtain Cell, and thereby avoid cost to defendant, defendant is liable.

# PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against each defendant as follows:

A. A finding that defendant infringed one or more of the exclusive copyrights vested in CFH with respect to the work at issue, Cell;

B. Actual damages and profits to be proven at trial under 17 U.S.C. § 504(b), including prejudgment and post-judgement interest, or, as plaintiff may elect at any time before final judgment is rendered, statutory damages pursuant to 17 U.S.C. § 504(c).

C. If statutory damages are not elected, a finding that defendants' infringement was committed willfully, and an award of punitive damages.

D. If statutory damages are elected, a finding that defendants' infringement was committed willfully, and an award of statutory damages of a just sum of not more than $150,000 with accruing post-judgment interest;

E. Entry of permanent injunction enjoining defendant from infringing plaintiff's rights in its Motion Picture, including without limitation using the internet to reproduce, distribute or copy plaintiff's Motion Picture, and further directing defendant to destroy all unauthorized copies of plaintiff's Motion Picture and to delete all software used to make or distribute copies or exchange unlicensed content using the BitTorrent protocol.

F. Plaintiff's reasonable costs and attorney fees pursuant to 17 U.S.C. § 505; and

G. Such other and further relief as the Court deems proper.

Dated:   September 14, 2016                   Respectfully submitted,
                                               s/ Joshua S. Wyde

Gary J. Fischman                              Joshua S. Wyde, Attorney-in-Charge

 Tex. State Bar No. 787469                     Tex. State Bar No. 24060858
 S.D. Tex. Bar No. 17126                       S.D. Tex. Bar No. 873284

 FISCHMAN LAW PLLC                             THE LAW OFFICE OF JOSHUA S WYDE
 710 N. Post Oak Rd. Suite 105                 710 N. Post Oak Rd. Suite 105
 Houston, TX 77024–3808                        Houston, TX 77024–3808
 Tel: 713.900.4924                             Tel: 713.482.1916

fischman@fischmaniplaw.com                Fax: 713.466.6563
                                          jwyde@wydelegal.com

Of Counsel                                Attorney for Plaintiff,
                                          CELL Film Holdings, LLC